UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| HIBBETT SPORTING GOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-524-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ML GEORGETOWN PARIS, LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This action arises from a dispute over a commercial lease agreement for space in the Georgetown Center. Defendant ML Georgetown Paris, LLC ("ML Georgetown") filed a motion to dismiss the Complaint for failure to state a claim and failure to meet the minimum amount in controversy under 28 U.S.C. § 1332. Additionally, it argues that the Court should decline to exercise jurisdiction under the Declaratory Judgment Act. [Record No. 14] The motion will be denied because the plaintiff has alleged facts sufficient to state a claim for relief and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Additionally, the Court will not decline to exercise jurisdiction under the Declaratory Judgment Act.

**I.**

Plaintiff Hibbett Sporting Goods, Inc. ("Hibbett") and Georgetown Centre Partners, Ltd., the predecessor-in-interest of ML Georgetown entered into a lease agreement to lease approximately 5,370 gross square feet in the Georgetown Center ("the Lease"). [Record No.

1, p. 2] The Lease includes a main term of five years and two five-year optional renewal terms. *Id.* The Lease is current through January 30, 2020, under the first optional renewal term. *Id.* at 3. Hibbett and Georgetown Centre Partners, Ltd., amended the Lease in May 2009 to require continuing co-tenancy and to provide an option to terminate it or continue to pay alternative rent if the requirement was violated. *Id.* One of the continuing co-tenants (K-Mart) closed in April 2017, and Hibbett wrote to Georgetown Centre, LLC, for a rent credit of $33,557.33 to be used as a tenant's payment of alternative rent. After the rent credit was exhausted, Hibbett would commence alternative rent of four percent of its monthly gross sales. *Id.* at 4. Hibbett also completed an Estoppel Certificate and forwarded it to ML Georgetown highlighting the right to a credit against future payments that would otherwise be due under the lease. *Id.*

Hibbett received a Notice of Default for nonpayment on August 10, 2018. *Id.* at 5. And it received another letter on August 21, 2018, stating that the Landlord elected to terminate the Lease and required that it vacate the premises prior to September 10, 2018, because of the alleged non-payment of rent due under the Lease. *Id.* at 7. Hibbett responded to the letter and contended that:

> (1) notice of default was not sufficient, (2) Hibbett was entitled to a rent credit due to the failure of the Continuing Co-Tenancy Requirement as set forth in the Fifth Amendment to Lease Agreement, (3) in the Estoppel Certificate Hibbett disclosed the rent credit to ML Georgetown prior to its purchase of the Center, and (4) the prior Landlord, Georgetown Centre, LLC, had recognized Hibbett's right to a credit against amounts otherwise due to be paid pursuant to the Lease.

*Id.* ML Georgetown then replied that it would not withdraw the Notice of Default because it asserted that Hibbett did not have the right to only pay a percentage of the rent. *Id.*

Hibbett now seeks a declaratory judgment stating that it is not in default of its obligations under the Lease and that ML Georgetown has not provided a "written default notice" in accordance with Paragraph 25 and 32.2 of the Lease. *Id*. at 8-9. Hibbett also asserts an anticipatory breach of the Lease. *Id*. at 9-10.

## II.

### a. The Plaintiff Has Pled Sufficient Facts To State A Claim For Anticipatory Breach Of Contract.

When evaluating a motion to dismiss for failure to state a claim under Federal Rule 12(b)(6), the court must decide whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). While a complaint does not need to contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And while plaintiffs are not required to plead facts showing that the defendant is likely to be responsible for the harm alleged, plaintiffs must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Hibbett alleges that ML Georgetown's Notice of Default indicating its decision to terminate the Lease is an anticipatory breach of the Lease. [Record No. 1, p. 9] It contends

that it will suffer irreparable harm if the defendant terminates the Lease and takes action to re-enter or dispossess Hibbett from the leased premises. *Id*.

ML Georgetown argues that Hibbett has failed to state a claim for anticipatory breach of the Lease. [Record No. 14, p. 7] Instead, it contends that Hibbett's allegations regarding failure to grant rent credits and improper issuance of the Notice of Default constitute past or present breaches. *Id*. The defendant explains that its issuance of the Notice of Default seeking to terminating the Lease for non-payment of rent did not illustrate an intention not to perform some future obligation. *Id*. It also argues that the Notice of Default stated that termination was to happen immediately. Thus, if there was a breach it was a present one. *Id*.

Anticipatory breach of contract is "an unequivocal repudiation or renunciation of an executory contract in advance of the time of performance." *Jordon v. Nickell*, 253 S.W.2d 237, 230 (Ky. 1952). Such a breach may, "at the election of the injured party, be regarded as an anticipatory breach and support an immediate action of damages without waiting for the time of performance." *Id*. The Restatement (Second) of Contracts § 253 states that "[w]here an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach." "Courts determine whether anticipatory repudiation has occurred on a case-by-case basis, depending on the particular contract language involved." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 599 (6th Cir. 2004).

To claim breach of contract under Kentucky law, the plaintiff must establish "1) existence of a contract, 2) breach of that contract, and 3) damages flowing from the breach of contract." *Fifth Third Bank v. Lincoln Fin. Sec. Corp.*, 453 F. App'x 589, 601 (6th Cir. 2011)

(quoting *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)). The court in *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop.* resolved a motion to dismiss for failure to state a claim for breach of contract. 2015 U.S. Dist. LEXIS 94372 *1, *7-11 (W.D. Ky. 2015). There, the plaintiff alleged that the defendant breached the agreement by failing to provide thirty days' notice before terminating the plaintiff's service and that the defendant threatened to remove the plaintiff's facilities without first giving the plaintiff thirty days to remove its facilities. *Id*. at *8-9. The defendant had sent a letter stating that, if full payment was not received in eight days, it would start removing all of the plaintiff's equipment and facilities. *Id*. at *3. The court concluded that neither allegation stated a viable claim for breach of contract because the plaintiff did not allege an actual breach, but that it might state a claim for anticipatory repudiation. *Id*. at *9. The court allowed the plaintiff to amend its complaint to assert a claim for anticipatory repudiation. *Id*. at *10.

Here, Hibbett has pled sufficient facts to state a claim for anticipatory breach of contract. Similar to *Time Warner*, Hibbett alleges facts that it has not yet been removed from the property but if it were removed, the contract would be breached and it would suffer harm. Hibbett further argues that the defendant's stated intention to terminate the lease is an anticipatory breach. [Record No. 1, p. 9] ML Georgetown admits that suit was filed prior to the deadline for the plaintiff to vacate the premises. [Record No. 16, p. 3] In reviewing the Complaint in the light most favorable to the plaintiff, the plaintiff has stated sufficient facts to state a claim for relief. *See Twombly*, 550 U.S. at 555-56; *In re DeLorean Motor Co*., 991 F.2d 1236, 1240 (6th Cir. 1993).

### b. The Plaintiff's Claim Exceeds $75,000.00, Exclusive Of Interest And Costs And Meets The Jurisdictional Minimum Under 28 U.S.C. § 1332.

A federal court may exercise diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The plaintiff requests that the Court calculate the amount in controversy to include the optional five-year renewal term included in the parties' lease agreement and contractual attorney's fees. [Record No. 15, p. 7]

A plaintiff's alleged amount in controversy is accepted if it is made in good faith. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014). "A court must not dismiss an action for failure to meet the amount in controversy requirement unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992). Further, in calculating the amount in controversy for declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554 (6th Cir. 2010) (citing *Hunt v. Wash State Apple Ader. Comm'n*, 432 U.S. 333, 347 (1977) (superseded by statute on other grounds)).

ML Georgetown contends that the amount in controversy has not been met. [Record No. 14, p. 8] It asserts that the value of the object of the litigation is only the remaining seventeen months on the current lease term. *Id.* It argues that the most the plaintiff will pay for the seventeen months of the Lease is $39,586.92 and that sum is the total value of the object of the litigation. *Id.* ML Georgetown's calculation does not include the optional lease term

but it argues that including the optional term is too prospective to be included in the calculation. *Id.* Alternatively, it argues that the estimate for contractual attorney's fees is unreasonable. *Id.*

Hibbett calculates the total value of the Lease as being is either $364,471.92 or $145,747.99. [Record No. 15, p. 7-8] The first calculation is based on the potential minimum annual rent due under the second optional renewal term if the continuing co-tenancy requirement is met. *Id.* Conversely, the second calculation is based on percentage rent if the continuing co-tenancy requirement is not fulfilled. *Id.* at 8. Both calculations include the remaining seventeen months on the first renewal term as well as the potential second renewal term. *Id.* at 7-8.

Other district courts have considered whether future options to renew are included when calculating the amount in controversy. For example, in both the Eastern and Western District of Louisiana, "[u]nexercised renewal options are to be considered when considering amount in controversy." *Corbello v. Targa Res. Inc.*, 2012 U.S. Dist. LEXIS 7 *1, *10 (W.D. La. 2012); *see also O'Neal v. Circle K Corp.*, 1987 U.S. Dist. LEXIS 5481 *1 (E.D. La. 1987). In the Southern District of Illinois, the court concluded that the option to renew the lease was neither speculative nor conclusory when renewal of the lease term was anticipated. Thus, it could be considered in calculating the amount in controversy. *Coinmach Corp. v. Marion County Hous. Auth.*, 2006 U.S. Dist. LEXIS 24030 *1, *2 (S.D. Il. 2006). Similarly, the United States Court of Appeals for the Eighth Circuit has noted that the value of the object of litigation can include "the value of the lease agreement if terminated," including the option to renew and

continue operations on the premises. *Fitzgerald Railcar Servs. of Omaha, Inc. v. Chief Indus.*, 141 F. App'x 491, 492-93 (8th Cir. 2005).

Based on the foregoing authorities, the Court will consider the optional five-year renewal term in calculating the amount in controversy. Therefore, the value of the object of the litigation is well over $75,000, exclusive of interest and costs. Because the Court concludes that the amount in controversy is met without considering contractual attorney's fees, that issue need not be addressed in resolving the defendant's motion to dismiss.

### c. The Court Will Not Decline To Exercise Jurisdiction Under The Declaratory Judgment Act.

"Once the Court has determined that subject matter jurisdiction exists, it must evaluate whether this case is appropriate for declaratory judgment pursuant to the Declaratory Judgment Act." *Brotherhood Mutual Insurance Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 692 (E.D. Ky. 2002). The Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). As a result, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at 282.

> In deciding whether a case is appropriate for declaratory judgment, the principal criteria are (1) whether the judgment would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986) (citing *Grand Trunk W. R.R. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). This list is not exhaustive and the "court must make a full inquiry into all relevant considerations." *Brotherhood*, 200 F. Supp. 2d at 692.

Thus, as noted above, the Court must determine whether issuance of a declaratory judgment will "serve a useful purpose in clarifying and settling the legal relationships in issue" and whether it "will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." *Id*. The court should decline to issue a declaratory judgment if it will not serve these functions. *Grand Trunk W. R.R.*, 746 F.2d at 326. However, "where a declaratory action and a claim over which this Court must exercise jurisdiction are 'closely intertwined,' then 'judicial economy counsels against dismissing the claims for declaratory judgment relief while adjudicating' the claims over which this Court must exercise jurisdiction." *Grizzly Processing, LLC v. Wausau Underwriters Ins. Co.*, 2010 U.S. Dist. LEXIS 20619 *1, *6-7 (E.D. Ky. 2010) (citing *Adrian Energy Associates v. Michigan Public Service Commission*, 481 F.3d 414, 422-23 (6th Cir. 2007)).

Hibbett seeks a declaratory judgment that it is not in default under the Lease and that an event of default within the meaning of the Lease has not occurred. [Record No. 1, p. 9] It also requests a declaratory judgment stating that the defendant did not provide a written default notice in accordance with the Lease. *Id*. Hibbett also seeks monetary damages for an anticipatory breach of the Lease. *Id*.

ML Georgetown argues that Hibbett attempts to use the declaratory judgment count as a tactical device to bring the case in federal court and that the court should not exercise its

discretionary jurisdiction over the case. *Id*. ML Georgetown also contends that the attempted use of a declaratory judgment to resolve the administration of the Lease encroaches on state jurisdiction in property law disputes. *Id*. at 5. Lastly, it asserts that Hibbett's inclusion of a claim for "anticipatory breach of a lease" does not justify the exercise of jurisdiction because the claim is not independent of the claim for declaratory relief. *Id*. at 6. On the other hand, Hibbett believes that jurisdiction over its claim is mandatory because it pled a separate legal claim for damages based on the defendant's anticipatory breach of the lease. [Record No. 15]

Hibbett references this Court's decision in *Leasing One v. Fid. & Deposit Co. of Md.*, 2011 U.S. Dist. LEXIS 95683 (E.D. Ky. 2011), in support of its position. There, the undersigned granted a motion to abstain because there was only a claim for declaratory relief, not a claim for money damages. This Court explained that the case was different from those where the complaints contain both declaratory judgment and non-declaratory judgment claims. Hibbett believes that this case is distinguishable from *Leasing One* because its Complaint contains both a declaratory judgment claim and a claim for money damages for the anticipatory breach of the lease.

Hibbett also cites *Knowlton Construction Company v. Liberty Mutual Insurance Company,* where the court denied a motion to remand on the basis of a declaratory judgment. 2007 U.S. Dist. LEXIS 80605 (S.D. Ohio 2007) (The Report & Recommendation was adopted in *Knowlton Constr. Co. v. Liberty Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 91569 (S.D. Ohio 2007)). In *Knowlton*, the plaintiff asserted two claims for monetary relief along with a claim for a declaratory judgment. *Id*. The court explained that exercising jurisdiction over the claims for monetary relief is mandatory and not discretionary. *Id*. at *6.

Hibbett further references *Farris v. State Farm*, 617 F. Supp. 2d (S.D. Ohio 2008), which held that jurisdiction was properly exercised over a declaratory judgment and breach of contract claim because jurisdiction was grounded in the mandatory jurisdiction over the claim for breach of contract. The court explained that:

> [the plaintiff's] claims for monetary damages arising out of [the defendant's] alleged breach of her settlement agreement with the other driver, over which this Court must exercise jurisdiction, cannot be adjudicated without considering the issues raised in the declaratory judgment claim, which form the basis for determining whether [the defendant's] alleged breach was actually a breach or not. Thus, there is no basis for bifurcating [the plaintiff's] claims and sending only the declaratory judgment portion back to state court.

*Id*. at 659.

Further, the Court in *Grizzly Processing, LLC v. Wausau Underwriters Ins. Co.*, denied a motion to remand where the plaintiff brought both a declaratory judgment action and a breach of contract claim. 2009 U.S. Dist. LEXIS 113370 *1, *6-9 (E.D. Ky. 2009). The Court noted that if there was only a claim for a declaratory relief, then after balancing the applicable factors, the Court may have agreed that the case should have been remanded. *Id*. at *6. However, there was a declaratory judgment claim and a breach of contract claim. It concluded that, "[e]ven if th[e] Court were inclined to remand the declaratory action it will not do so here where the Court must exercise jurisdiction over a breach of contract claim that is at least 'closely intertwined.'" *Id*. at *8-9. It further explained that judicial economy would not be served by remanding the declaratory judgment action since the plaintiff's breach of contract claim could not be resolved without determining the issues in the declaratory judgment claim first. *Id*. at *9.

ML Georgetown argues that Hibbett's breach of contract claim and declaratory judgment action are wholly dependent on each other. However, similar to *Knowlton*, *Farris*, and *Grizzly Processing*, this Court will exercise jurisdiction over the case because Hibbett makes a claim for both monetary damages and a declaratory judgment. As explained in *Grizzly Processing*, if a claim with mandatory jurisdiction and a claim for declaratory relief are "closely intertwined," then the court should not dismiss the claim for declaratory relief. *See also Adrian Energy Associates*, 481 F.3d at 422-23. Similarly, the court in *Farris* noted that the claims could not be adjudicated without considering the issues raised in the declaratory judgment claim.

ML Georgetown also argues that Hibbett commits "procedural fencing" because this suit could not properly be before this Court without the declaratory judgment. [Record No. 14, p. 4] However, this Court would have jurisdiction over the anticipatory breach of contract claim because all of the jurisdictional requirements of 28 U.S.C § 1332 are met. The parties are diverse and the claim exceeds the minimum amount in controversy of $75,000, exclusive of interest and costs.

### III.

In summary, ML Georgetown's motion to dismiss will be denied because Hibbett has stated a claim upon which relief can be granted. Further, this action meets the minimum amount in controversy under 28 U.S.C. § 1332. Finally, the Court will exercise jurisdiction over both the claim for monetary damages and the declaratory judgment claim.

Accordingly, it is hereby

**ORDERED** that Defendant ML Georgetown's motion to dismiss [Record No. 14] is **DENIED**.

Dated: February 6, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge